**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**



———————————————————————x

Maria A. Guzman, Individually and as
Administrator of the Estate of Wilson Diaz
Guzman, Deceased,

Plaintiff,

-against-                                                    Case No.: 1:24-cv-00363-CM

The City of New York, New York City Health and
Hospitals Corporation ("HHC"); Captain Roscoe Neely
(Shield No. 1839), Assistant Deputy Warden ("ADW")
Oladipo K. Salako (Shield No. 44), ADW Onyemekara
Agunwa (Shield No. 1002), ADW Alexis Parrilla,
Correction Officer ("C.O.") Keston Bertrand (Shield No.
18841); C.O. Robert Sanchez (Shield No. 17430); C.O.
Theodore Robinson (Shield No. 2528); C.O. Suriel Julio
(Shield No. 14377); C.O. Anthony Samuels (Shield No.
18737); HHC Tasbirul Alam. M.D.: HHC Warren Bush;
HHC Terra Hailand; HHC FNUK Chukwuneke, M.D.
(first name being unknown); HHC Vanessa Lubin, RN;
HHC Jenny Acevedo, RN; C.O.s Does 1–5; and HHC
Does 1–5.

Defendants.

———————————————————————x

**DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND
DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

McMahon, J.:

Plaintiff Maria A. Guzman ("Ms. Guzman" or "Plaintiff") alleges that the City of New York, New York City Health and Hospitals Commission ("HHC"), Captain Roscoe Neely, Assistant Deputy Warden ("ADW") Oladipo K. Salako, ADW Onyemekara Agunwa, ADW Alexis Parrilla, Correction Officer ("C.O.") Keston Bertrand, C.O. Robert Sanchez, C.O. Theodore Robinson, C.O. Suriel Julio, C.O. Anthony Samuels, Dr. Tasbirul Alam, M.D., Warren Bush, Terra Hailand, Dr. Bernard Chukwuneke, M.D., Vanessa Lubin, RN, Jenny Acevedo, RN, C.O. Does 1–5, and HHC Does 1–5 (collectively "Defendants") deprived her son, Wilson Diaz Guzman ("Mr. Diaz Guzman"), of his constitutional rights under 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution by failing to provide Mr. Diaz Guzman proper medical care for his mental health and diabetes. Dkt. No. 1. Ms. Guzman alleges that this failure to provide Mr. Diaz Guzman proper medical care for his mental health and diabetes led to Mr. Diaz Guzman's suicide on January 22, 2021. *Id.*

Defendants Dr. Alam, Bush, Hailand, Dr. Chukwuneke, ADW Salako, ADW Agunwa, ADW Parrilla, C.O. Sanchez, C.O. Robinson, C.O. Julio, C.O. Samuels, Captain Neely, C.O. Does 1–5, and HHC Does 1–5 (collectively "Moving Defendants") move to dismiss the Complaint for failure to state a claim pursuant to 12(b)(6). Dkt. No. 72.

This Court finds that the Complaint fails to allege that Terra Hailand acted recklessly in pursuing an alternate course of treatment. The Court also finds that the allegations against the Doe Defendants are time-barred and so must be dismissed.

The Court also finds that the Complaint fails to make non-conclusory allegations showing that Dr. Tasbirul Alam, M.D., Warren Bush, and/or Dr. Bernard Chukwuneke, M.D. knew or should have known about Mr. Diaz Guzman's medical and mental health conditions. In addition,

the Court finds that the Complaint fails to allege that ADW Onyemekara Agunwa, ADW Alexis

Parilla, ADW Oladipo Salako, C.O. Theodore Robinson, C.O. Robert Sanchez, C.O. Suriel Julio,

C.O. Anthony Samuels, and/or Captain Roscoe Neely knew, or should have known, about Mr.

Diaz Guzman's medical or mental health conditions.

Therefore, the Court GRANTS the Motion to Dismiss as it pertains to Defendants Dr.

Tasbirul Alam, M.D., Warren Bush, Terra Hailand, Dr. Bernard Chukwuneke, M.D., ADW

Onyemekara Agunwa, ADW Alexis Parilla, ADW Oladipo Salako, C.O. Theodore Robinson,

C.O. Robert Sanchez, C.O. Suriel Julio, C.O. Anthony Samuels, Captain Roscoe Neely, HHC

Does 1–5, and DOC Does 1–5. Most of those dismissals are without prejudice; a few are with

prejudice.

Finally, the Court DENIES Ms. Guzman's Motion for Leave to Amend, but without

prejudice to renewal on a proper record — which includes a draft amended complaint that can be

assessed for futility.

## BACKGROUND

### I.    THE PARTIES

Maria A. Guzman ("Ms. Guzman" or "Plaintiff") is the mother of Wilson Diaz Guzman

("Mr. Diaz Guzman"). Ms. Guzman now serves as the administrator of Mr. Diaz Guzman's

estate. Dkt. No. 1, ¶ 23. On January 22, 2021, Mr. Diaz Guzman committed suicide while

detained pretrial at Rikers Island. *Id.* ¶ 1.

The City of New York ("City") is a municipal entity created and authorized under the

laws of the State of New York and is authorized by law to maintain the New York City

Department of Correction ("DOC"), which acts as its agent in the area of corrections and for

which City is ultimately responsible. *Id.* ¶ 25.

New York City Health and Hospitals Corporation ("HHC") is a corporation organized under the laws of the State of New York that provides medical and psychiatric treatment for people in City jails pursuant to a contract with City. *Id.* ¶ 26.

Captain Roscoe Neely, ADW Oladipo K. Salako, ADW Onyemekara Agunwa, ADW Alexis Parilla, C.O. Theodore Robinson, C.O. Robert Sanchez, C.O. Keston Bertrand, C.O. Suriel Julio, C.O. Anthony Samuels, Dr. Tasbirul Alam, M.D., Warren Bush, Terra Hailand, Jenny Acevedo, RN, Dr. Bernard Chukwuneke, M.D., Vanessa Lubin, RN, C.O. Does 1–5, and HHC Does 1–5 are individuals acting as agents, servants and employees of HHC and/or City. *Id.* ¶ 27.

The Complaint describes Doe Defendants as those "responsible for providing Mr. Diaz Guzman his insulin and did not." *Id.* ¶ 69. The Complaint describes C.O. Does as those "responsible for monitoring Mr. Diaz Guzman's cell and did not." *Id.* ¶ 70. The Doe Defendants have not been identified by Plaintiff. *Id.* ¶ 29.

Defendants Dr. Alam, Bush, Hailand, Dr. Chukwuneke, ADW Salako, ADW Agunwa, ADW Parrilla, C.O. Robinson, C.O. Sanchez, C.O. Julio, C.O. Samuels, Captain Neely, and Doe Defendants (collectively "Moving Defendants") moved to dismiss this claim pursuant to 12(b)(6). Dkt. No. 72.

## II.  **STATEMENT OF FACTS**

On January 17, 2021, Mr. Diaz Guzman entered DOC custody. Dkt. No. 1, ¶ 31. During his medical intake that day, Mr. Diaz Guzman allegedly reported to Nurse Acevedo that he had suicidal thoughts. *Id.* ¶ 32. Nurse Acevedo and Dr. Alam nonetheless recommended that Diaz Guzman be placed in general population housing, as opposed to placement in a mental observation unit. *Id.* ¶ 33.

Bush, a social worker for HHC, performed an initial mental health assessment and cleared Mr. Diaz Guzman for general population housing, after which DOC placed Mr. Diaz Guzman in general population housing at the Eric M. Taylor Center ("EMTC"), one of the jail facilities on Rikers Island. *Id.* ¶¶ 34–35.

On January 19, 2021, Mr. Diaz Guzman told Hailand, a staff member for HHC, that he had cut his arms and feared for his safety. *Id.* ¶ 36. Hailand ordered a mental health referral for Mr. Diaz Guzman. *Id.* ¶ 36.

On January 21, 2021, Mr. Diaz Guzman told Nurse Lubin that he felt unsafe; he also said that he wanted his blood sugar tested so that he could receive insulin for his diabetes. *Id.* ¶ 37. . Nurse Lubin did not give Mr. Diaz Guzman insulin; neither did she refer him to psychiatric care. *Id.* ¶ 38. However, the Complaint pleads that Mr. Diaz Guzman was scheduled for a medical visit so that he could receive a fingerstick to monitor whether he needed insulin for diabetes. *Id.* ¶ 44. It also alleges that DOC failed to take Mr. Diaz Guzman to that medical appointment. *Id.* ¶ 45.

According to the Complaint, Dr. Chukwuneke knew that Mr. Diaz Guzman had asked for insulin, but did not give Mr. Diaz Guzman any insulin. *Id.* ¶¶ 39–40. The Complaint does not explain how Dr. Chukwuneke knew that Diaz Guzman had asked for insulin; it also does not plead any facts tending to show that Dr. Chukwuneke knew that Diaz Guzman might actually need insulin. Indeed, it pleads facts tending to show that he had yet to be diagnosed as needing insulin (see supra.).

Also on January 21, 2021, ADW Agunwa asked to transfer Mr. Diaz Guzman to the Otis Bantum Correctional Center ("OBCC"). *Id.* ¶ 41. ADW Parilla approved the request; and prison officials transferred Mr. Diaz Guzman to Cell No. 17, an isolation cell in OBCC. *Id.* ¶¶ 42, 48.

The Complaint does not allege why ADW Agunwa and ADW Parilla transferred Mr. Diaz-Guzman, or whether it had anything to do with the mental health referral. *See id.*

On January 22, 2021, Mr. Diaz Guzman called his mother to say that he had not received any insulin. *Id.* ¶ 50. At approximately 3:40 pm that afternoon, Captain Neely and C.O. Selby discovered that Mr. Diaz Guzman had caused water to flood both his cell and the area in front of his cell, and moved his mattress so that it blocked the view into his cell. *Id.* ¶ 51. Captain Neely and C.O. Selby entered the cell to find Mr. Diaz Guzman standing on his bed frame and "acting erratically." *Id.* ¶ 51.

C.O. Robinson shut off the water to Mr. Diaz Guzman's cell. *Id.* ¶ 54. When C.O. Julio and C.O. Samuels arrived, C.O. Selby informed them that Mr. Diaz Guzman had activated the sprinkler inside his cell. *Id.* ¶ 57. ADW Salako, ADW Agunwa, and C.O. Bertrand also knew that Mr. Diaz Guzman flooded his cell. *Id.* ¶ 58. C.O. Sanchez was also in the area. *Id.* ¶ 59. Unidentified persons who were in custody at the time allegedly heard Mr. Diaz Guzman asking officers for medical attention — specifically, telling C.O. Julio and C.O. Samuels that he wanted insulin. *Id.* ¶¶ 52, 61. No one called medical for Mr. Diaz Guzman. *Id.* ¶ 63.

The last time a City employee checked on Mr. Diaz Guzman prior to his death was at 6:18pm. *Id.* ¶ 71.

At approximately 6:55pm, C.O. Bertrand checked Cell No. 17 and discovered that Mr. Diaz Guzman had hanged himself from the fire sprinkler. *Id.* ¶¶ 48, 72. C.O. Selby arrived and entered the cell with C.O. Bertrand, but neither gave emergency assistance for five minutes, at which point one of the C.O.s began performing CPR. *Id.* ¶¶ 72–73. At 7:30pm, Mr. Diaz Guzman was pronounced dead. *Id.* ¶ 75.

Following Mr. Diaz Guzman's death, the New York State Commission on Correction's ("COC") Medical Review Board reviewed this matter. The COC concluded that HHC staff should have reported Mr. Diaz Guzman to psychiatry after he reported suicidal ideation, rather than clearing him for general population housing. *Id.* ¶ 7 (citing *Final Report of the New York State Commission of Correction In the Matter of the Death of Wilson Diaz-Guzman, an incarcerated individual of the Otis Bantum Correctional Center*, New York State Commission of Correction https://scoc.ny.gov/system/files/documents/2023/09/diaz_guzman_wilson_obcc.pdf ("COC Report")). The COC Medical Review Board also concluded that HHC staff should have placed Plaintiff's decedent on increased supervision after seeing evidence that Diaz Guzman self-harmed, and that C.O.s should have made an emergency referral to mental health when Mr. Diaz Guzman displayed a pattern of escalated behavior on the afternoon of January 22, 2021. Dkt. No. 1, ¶ 7 (citing COC Report). The COC said nothing about diabetes or insulin.

The COC Report appears to provide the basis for many of the conclusory allegations in the Complaint, although what can be seen on line is heavily redacted. No one has provided me with the full report, even though it is both pleaded and relied on in the Complaint, and, because it is a report of an official body incorporated by reference, its contents could be considered in connection with a Motion to Dismiss. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

## III.   PROCEDURAL HISTORY

On January 17, 2024, Ms. Guzman filed a Complaint in this Court, alleging that the various individual defendants acted with deliberate indifference to her son's medical needs, thereby depriving him of his constitutionally protected rights under 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. *Id.* ¶¶ 76–79. Ms.

Guzman also alleged that the City of New York and HHC's policies and practices violated Mr. Diaz Guzman's rights under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments. *Id.* ¶¶ 80–85.

On June 7, 2024, Defendants Dr. Tasbirul Alam, M.D., Warren Bush, Terra Hailand, Dr. Bernard Chukwuneke, M.D., ADW Oladipo K. Salako, ADW Onyemekara Agunwa, ADW Alexis Parrilla, C.O. Theodore Robinson, C.O. Robert Sanchez, C.O. Suriel Julio, C.O. Anthony Samuels, Captain Roscoe Neely, and the Doe Defendants filed this Motion to Dismiss Pursuant to 12(b)(6). Dkt. No. 72.

## DISCUSSION

### I.    LEGAL STANDARD

To survive a Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim, "The complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]ll reasonable inferences should be drawn in favor of the plaintiff," but the "complaint must contain sufficient allegations to nudge a claim 'across the line from conceivable to plausible.'" *Sphere Dig., LLC v. Armstrong*, 2020 WL 6064156, at *4 (S.D.N.Y. Oct 14, 2020) (quoting *Twombly*, 550 U.S. at 555). When plaintiffs fail to "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555.

## II.   **STANDARDS ON THE MOTION TO DISMISS.**

Ms. Guzman alleges that each of the Moving Defendants acted with deliberate

indifference to Mr. Diaz Guzman's mental health crisis and need for insulin. *See* Dkt. No. 1.

Such a claim is ordinarily asserted by a convicted prisoner as a violation of the Eighth

Amendment's bar against cruel and unusual punishment; when asserted by a pre-trial detainee

like Diaz Guzman it falls under the Fourteenth Amendment.[1]

"While in custody, a pretrial detainee has a Fourteenth Amendment substantive due

process right to care and protection, including protection from suicide." *Kelsey v. City of New*

*York*, 306 Fed.Appx. 700, 701 (2d Cir. 2007). "A pretrial detainee may establish a § 1983 claim

for allegedly unconstitutional conditions of confinement — such as the denial of mental health

care — by showing that the officers acted with deliberate indifference to the challenged

conditions." *Case v. Anderson*, 2017 WL 3701863, at *8 (S.D.N.Y. August 25, 2017) (internal

quotations and citation omitted). "[T]o establish a claim for deliberate indifference… under the

Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the

defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act

with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even

though the defendant-official knew, or should have known, that the condition posed an excessive

risk to health or safety." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). "Custodians have

been found to 'know' of a particular vulnerability to suicide when they have had actual

---

[1] Plaintiff's complaint also purports to rely on the Fourth and Fifth Amendments. There is no fact alleged that would tend to show that Diaz Guzman was subjected to an unreasonable search or seizure in violation of the Fourth Amendment, so any claim allegedly arising under the Fourth/Fourteenth Amendment must be summarily dismissed. As for the Fifth Amendment, "The Fifth Amendment Due Process Clause applies only to the federal government, and not to state or municipal governments." *Robinson v. Wright*, 2022 WL 2663369, at *7 (N.D.N.Y. July 11, 2022) (citing *Dusenbury v. United States*, 534 US 161, 167 (2002)). As no Defendant here is a federal actor, only the Fourteenth Amendment's due process clause applies. *See Ambrose v. City of New York*, 623 F.Supp.2d 454 (S.D.N.Y. 2009).

knowledge of an obviously serious suicide threat, a history of suicide attempts, or a psychiatric diagnosis identifying suicidal propensities." *Id.* at *11 (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1025 n.1 (3d Cir. 1991)).

Diabetes is a "sufficiently serious medical condition" to undergird a Fourteenth Amendment claim. *Turner v. City of N.Y.*, 2020 WL 496116, at *9 (S.D.N.Y. January 8, 2020). Furthermore, if a prisoner suffers from multiple conditions — such as diabetes and suicidal ideation, which are alleged in the instant case — each individual condition may become exacerbated, so "courts must examine the effects of the conditions in combination." *See Darnell*, 849 F.3d at 31.

At numerous points, the Complaint alleges that Diaz Guzman's medical record includes the fact that Mr. Diaz Guzman's medical records indicate that he suffered from "suicidal ideation." *Id.* ¶¶ 40–42. For purposes of this motion, I will assume that this refers to a note that Nurse Acevedo allegedly took during Plaintiff's intake, when he complained of harboring suicidal thoughts.[2] The Complaint does not allege that the medical record indicates that Mr. Diaz Guzman reported any a history of suicide attempts, or any psychiatric diagnosis indicating suicidal propensities. *See id.* Plaintiff does not allege that the medical record contained any indication that Plaintiff's decedent suffered from diabetes or required insulin.

Still, Ms. Guzman alleges that each Defendant failed to act in response to both Mr. Diaz Guzman's suicidal ideation and his purported need for insulin. Dkt. No. 1. Therefore, I must determine whether Plaintiff has pleaded facts tending to show that each Moving Defendant (1) "recklessly failed to act with reasonable care to mitigate the risk that the condition[s] posed to

---

[2] I do not know whether Plaintiff became aware of the contents of her son's medical record as part of the COC process, or in some other manner, or whether she is simply speculating about what is in those records. The Complaint does not enlighten me; neither does the briefing.

the pretrial detainee" and (2) that "the defendant-official knew, or should have known, that the condition[s] posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

## III.   DECISION ON THE MOTION TO DISMISS

### A.   The Court Grants the HHC Defendants' Motion to Dismiss.

1. *The Court Grants Dr. Tasbirul Alam's Motion to Dismiss.*

Ms. Guzman argues that Dr. Alam recklessly failed to provide Mr. Diaz Guzman with adequate medical care when Dr. Alam recommended that prison officials place Mr. Diaz Guzman in general population housing as opposed to suicide watch or another form of heightened supervision. Dkt. No. 90, pp. 18–20. But the Complaint fails to allege that Dr. Alam knew, or should have known, about Mr. Diaz Guzman's health or safety. The only reference to Dr. Alam in the Complaint's recitation of facts states, "Dr. Alam recommended general population housing." Dkt. No. 1, ¶ 33. The Complaint does not allege that Mr. Diaz Guzman or anyone else told Dr. Alam about Mr. Diaz Guzman's suicidal ideation; nor does the Complaint allege that Nurse Acevedo reported to Dr. Alam about Mr. Diaz Guzman's suicidal ideation. *Id.* ¶¶ 32, 33.

In her opposition papers, Ms. Guzman argues that Mr. Diaz Guzman's suicidal ideation was noted in the medical record, and Dr. Alam should have discovered that note but failed to do so. Dkt. No. 90, p. 18. In general, courts should not consider factual allegations made for the first time in opposition papers. *See Paul v. Bailey*, 2013 WL 2896990, at *5 (S.D.N.Y. June 13, 2023). The court in *Paul* chose to make an exception to this rule and consider the factual allegations made in the opposition papers as further amendments to an already amended complaint. *Id.* at *5. While *Paul* differs from the instant case in two significant ways – (1) the plaintiff in *Paul* represented himself pro se, unlike Ms. Guzman who has lawyers representing

her; and (2) the complaint in *Paul* had already been amended before considering the facts in the opposition papers. *Id.* I believe the better part of valor is to consider the allegation here.

Even assuming that Dr. Tasbirul Alam read the medical record, the Complaint fails to sufficiently allege that information contained within would rise to the level of an "obviously serious suicide threat." *Case*, 2017 WL 3701863, at *11. In *Case*, the defendants were found deliberately indifferent upon a finding that the defendants knew about a prisoner's "psychiatric diagnosis identifying suicidal propensities." Id. at *11. Here, the Complaint alleges that review of the record would merely reveal evidence that Diaz Guzman had entertained suicidal thoughts — not that he had ever been diagnosed with suicidal propensities. Dkt. No. 1, ¶¶ 40–42. As noted above, *supra*, p. 8, the standard for deliberate indifference to suicide is an "obviously serious suicide threat." That is a far more onerous standard to meet than simply saying that someone said he had entertained suicidal thoughts.

Motions to dismiss applying this standard are denied only when defendants knew, or should have known, about previous suicide attempts or psychiatric diagnoses. For instance, in *Lara-Grimaldi v. County of Putnam*, 2018 WL 1626348 (S.D.N.Y. March 29, 2018), a motion to dismiss a Fourteenth Amendment claim was denied upon allegations that the defendants knew, or should have known, about the prisoner's previous suicide attempts, drug use, and diagnosis of bipolar disorder. In another case, *Reynolds v. County of Onondaga*, 2023 WL 5200434 (N.D.N.Y. August 14, 2023), a motion to dismiss Eighth/Fourteenth Amendment claims was denied because it was alleged that defendants knew of the prisoner's drug use and history of suicide attempts. The facts in those cases are significantly more serious than those pleaded here. Thoughts of suicide, with no indication of prior suicide attempts or any psychiatric diagnoses, fails to rise to the level of an "*obviously serious* suicide threat." (Emphasis added)

Therefore, I grant Dr. Tasbirul Alam's Motion to Dismiss.

   *2.  The Court Grants Warren Bush's Motion to Dismiss.*

Ms. Guzman alleges that Warren Bush, an HHC social worker, acted recklessly by clearing Mr. Diaz Guzman for general population. Dkt. No. 1, ¶ 34. Ms. Guzman argues that by doing so, Bush acted with deliberate indifference to Mr. Diaz Guzman's suicidal ideation. *Id.* ¶¶ 76–79.

Bush alleges that he acted within his professional medical judgment, and that such a decision does not rise to the level of a constitutional violation. Dkt. No. 74, p. 6. He is correct: A difference of opinion regarding the appropriate choice of medical treatment does not rise to the level of a constitutional violation. *Williams v. Smith*, 2009 WL 2431948, at *9 (S.D.N.Y. August 10, 2009). "[Whether] to place a prisoner on suicide watch and what level of precaution to take with an inmate are issues within a professional medical judgment." *McEachin v. Bek*, 2012 WL 1113584, at *11 (W.D.N.Y. April 2, 2012) (citing *Gay v. Hammersley*, 2009 WL 596114, at *6 (S.D. Ill. March 6, 2009)). Furthermore, in *Gay*, 2009 WL 596114, at *7, the court stated that "[w]hile plaintiff disagreed with defendant's decision not to place him on suicide watch…, that [did] not give rise to [a] civil rights claim for violation of his Eighth Amendment right." Mistakes in judgment do not give rise to constitutional violations; only deliberate indifference does.

However, in both *Williams* and *Gay*, the Court analyzed whether the doctor made his treatment decisions with the *subjective* intent required for alleged Eighth Amendment violations asserted by convicted prisoners. In reviewing alleged Fourteenth Amendment violations asserted on behalf of pre-trial detainees, which is the applicable standard on this motion, the Court applies a different test. It must determine *objective* intent by analyzing whether an official "recklessly

failed to act with reasonable care to mitigate the risk" when the official "knew, or *should have known*, that the condition pose[d] an excessive risk to health or safety." *Darnell*, 849 F.3d, at 35 (emphasis added).

In *Case*, 2017 WL 3701863, my colleague Judge Roman, applying *Darnell*'s objective standard for alleged Fourteenth Amendment violations on a motion to dismiss, found that the defendant officials who apprehended an escaped psychiatric patient, and who had actual knowledge of his mental health background, acted with deliberate indifference when the they failed to take adequate precautions to protect the patient from committing suicide.

However, the Complaint here is vague and conclusory as to why or how Bush knew, or should have known, about Mr. Diaz Guzman's suicidal tendencies. Conclusory allegations of a defendant's knowledge are insufficient. *Molina v. County of Westchester*, 2017 WL 1609021, at *4 (S.D.N.Y. April 28, 2017). In *Molina*, my colleague Judge Bricetti dismissed a deliberate indifference claim on the basis that the plaintiff's allegation that the defendant "knew of the risk to the plaintiff's safety" was conclusory, because it did not "allege or explain how [the defendants] learned of this risk or how plaintiff knows th[e defendants] became aware of this risk." *Id.* at *4. In this case, the Complaint simply says that "Warren Bush completed an initial mental health assessment and cleared Mr. Diaz Guzman for general population, rather than having psychiatry assess and treat him and despite Mr. Diaz Guzman's expressed suicidal ideation." Dkt. No. 1, ¶ 34. The Complaint does not allege that Mr. Diaz Guzman told Bush about his suicidal ideation during the mental health assessment, that Bush received any reports about Mr. Diaz Guzman's suicidal thoughts from his colleagues, or that Bush had access to a medical record that would have provided Bush with notice of Mr. Diaz Guzman's suicidal

ideation. *See* Dkt. No. 1. It is possible that Ms. Guzman could clarify this in an amended pleading, but the complaint as it stands is inadequate.

Therefore, the Court grants Warren Bush's Motion to Dismiss.

### 3. The Court Grants Terra Hailand's Motion to Dismiss With Prejudice.

Ms. Guzman alleges that on January 19, 2021, Mr. Diaz Guzman told Hailand that he cut his arms the previous day in an act of self-harm and feared for his safety. Dkt. No. 1, ¶ 36. Ms. Guzman states that Hailand acted recklessly by only placing a mental health referral on Mr. Diaz Guzman's behalf; rather, she should have placed Mr. Diaz Guzman on suicide watch or another form of heightened supervision. Dkt. No. 90, p. 21.

However, the pleaded facts indicate that Hailand ordered a mental health referral after hearing about Diaz Guzman's behavior. As a matter of law, that demonstrates that Hailand did not "recklessly disregard" Mr. Diaz Guzman's self-harm. *See Williams v. Smith,* 2009 WL 2431948, at *9. The Second Circuit, in *Kelsey*, 306 Fed.Appx. at 703, stated that there was no deliberate indifference when "officers took affirmative and reasonable steps to protect detainees from suicide." Even though the harm was, tragically, not averted, prison officials who respond reasonably to the risk will be "found free from liability." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

Moreover, the fact that Plaintiff disagrees with Hailand's choice of how to deal with Mr. Diaz Guzman's revelations does not give rise to a deliberate indifference claim. Indifference means just that — indifference, doing nothing — and disagreements about treatment do not rise to the level of deliberate indifference. *See Williams v. Smith,* 2009 WL 2431948, at *9. And the fact that the COC concluded that the matter should have been handled differently does not mean there was a violation of federal law.

14

Thus, the Court grants Terra Hailand's Motion to Dismiss. As I can see no way to amend the pleading to allege facts that would give rise to a deliberate indifference claim, dismissal is with prejudice.

### 4.  The Court Grants Dr. Bernard Chukwuneke's Motion to Dismiss

Ms. Guzman alleges that, on January 21, 2022, Mr. Diaz Guzman informed Nurse Lubin that he "felt unsafe in his housing area, he appeared distressed, and he asked Nurse Lubin for his sugar to be tested to receive insulin for his diabetes." Dkt. No. 1, ¶ 37. Ms. Guzman then alleges that, "Nurse Lubin did not give Mr. Diaz Guzman his insulin or give him medical care, or refer him to psychiatric care for his distress, despite Mr. Diaz Guzman having cuts to his wrists and the notes in his medical file that showed his suicidal ideation." *Id.* ¶ 38. The Complaint — without further elaboration — then says that "[during] this visit, Dr. Chukwuneke was aware that Mr. Diaz Guzman was asking for his insulin," *id.* ¶ 39, before saying that "Dr. Chukwuneke did not give Mr. Diaz Guzman insulin, or any other medical care, or refer him to psychiatric care for his distress, despite Mr. Diaz Guzman having cuts to his wrists and the notes in his medical file that showed his suicidal ideation." *Id.* ¶ 40. Dr. Chukwuneke claims that Ms. Guzman's Complaint fails to allege that Dr. Chukwuneke ever saw the cuts on Mr. Diaz Guzman's wrists or reviewed Mr. Diaz Guzman's medical file. Dkt. No. 70, p. 9.

The claim against Dr. Chukwuneke is that he failed to provide Diaz Guzman with insulin, knowing that he had asked for it. But the fact that a prisoner asks for a specific medication does not mean that he needs that medication. Therefore, one cannot infer deliberate indifference from the bare allegation that Diaz Guzman had asked for insulin – assuming Dr. Chukwuneke was aware of that fact (a conclusory allegation unsupported by any information as to how the doctor learned of this request). There is no allegation in the Complaint that Diaz Guzman had ever been

diagnosed with insulin-dependent diabetes, or that he told anyone at intake that he was taking insulin. The allegation that Dr. Chukwuneke knew that Plaintiff's decedent had cut his wrist and reported suicidal thoughts does not support an inference that he was deliberately indifferent to Plaintiff's need for insulin.

In any event, the Complaint does not even allege that Dr. Chukwuneke ever saw the Plaintiff's decedent. It thus pleads no basis for the purely conclusory allegation that Dr. Chukwuneke "knew" that the Diaz Guzman had cut his wrist.

Ms. Guzman cites *Fontaine v. Cornwall*, 2019 WL 4257136 (N.D.N.Y. September 9, 2019), for the proposition that the Court can consider the existence of information in a medical file when determining whether a doctor might have acted with deliberate indifference. But in this case there is no allegation that anything in Diaz Guzman's medical file on January 21, 2022, would or could have alerted him to the possibility that Plaintiff's decedent might be an insulin dependent diabetic who needed insulin.  There is an allegation that Diaz Guzman's medical record contained a reference to suicidal ideation, Dkt. No. 1, ¶ 40. But insulin is not a treatment for suicidal ideation. Neither, by the way, is insulin a remedy for cuts on the wrist; so if Dr. Chukwuneke saw any such cuts, or was otherwise made aware of them, that would not logically have alerted him to the alleged fact that Diaz Guzman needed insulin.

In *Vassallo v. City of New York*, 2016 WL 6902478 (S.D.N.Y. November 22, 2016), my colleague Judge Failla denied a motion to dismiss when the plaintiff alleged that, as part of the medical history interview, he had disclosed that he had been diagnosed with diabetes, that he used an insulin pump, that he had run out of insulin, and that he had begun to experience swelling, burning pains, and sluggishness. But here, there is no allegation that Diaz Guzman informed anyone during his intake interviews that he had been diagnosed with diabetes or that he

16

was taking insulin or experiencing any symptoms. *See* Dkt. No. 1. The Complaint does allege

that, on January 21, 2022, while talking to Nurse Lubin, Mr. Diaz Guzman asked "for his sugar

to be tested to receive insulin for his diabetes." *Id.* ¶ 37. And it alleges that he had an

appointment for a finger stick to see whether he required insulin. Dkt. No. 1, ¶ 44. But it never

ties these requests to Dr. Chukwuneke.

Insofar as the Complaint alleges that Dr. Chukweneke failed to refer Diaz Guzman for

psychiatric care, *Fontaine* also not really help Plaintiff because the facts in that case differ

radically from those in the instant case. First and foremost, in *Fontaine* the court was deciding a

motion for summary judgment, not, as in the instant case, a motion to dismiss. Second, in

*Fontaine*, the defendant nurse practitioner actually met with the plaintiff for the purposes of

prescribing medication. *Id.* Ms. Guzman does not allege that Mr. Diaz Guzman ever met with Dr.

Chukweneke, or that the doctor saw or was told about the cuts on his wrist or read his medical

record. The pleading alleges only that Diaz Guzman met with Nurse Lubin. Dkt. No. 1, ¶¶ 39–

40. This is a purely conclusory allegation, of the sort that led Judge Bianco to dismiss the

complaint in *Houston v. Nassau County*, 2012 WL 729352, at *6 (E.D.N.Y. March 7, 2012) — a

case in which the plaintiff failed to allege how the defendant "would have knowledge of this

information."

Furthermore, as with Dr. Alam, even if Dr. Chukwuneke reviewed the medical record,

the Complaint fails to allege that the information contained within would rise to the level of an

"obviously serious suicide threat." *Case*, 2017 WL 3701863, at *11. In *Case*, the defendants

were found deliberately indifferent upon a finding that the defendants knew about a prisoner's

"psychiatric diagnosis identifying suicidal propensities." *Id.* at *11. Here, the Complaint alleges

that review of the record would merely reveal evidence that Diaz Guzman's had entertained

suicidal thoughts – not that he had ever been diagnosed with suicidal propensities. Dkt. No. 1, ¶¶ 40–42. As noted above, *supra*, p. 8. the standard for deliberate indifference to suicide is an "obviously serious suicide threat." That is a far more onerous standard to meet than simply saying that someone said he had entertained suicidal thoughts. While the cuts on the wrist do suggest the possibility of self-harm, the Complaint merely states that Mr. Diaz Guzman "ha[d] cuts on his wrists," Dkt. No. 1, ¶¶ 38, 40. It does not plead that Dr. Chukwuneke saw the cuts or was told about them, or that the medical record contained any information about Mr. Diaz Guzman's self-harm. *See id.*

Motions to dismiss under this standard are denied only when defendants knew, or should have known, about previous suicide attempts or psychiatric diagnoses. For instance, in *Lara-Grimaldi v. County of Putnam*, 2018 WL 1626348 (S.D.N.Y. March 29, 2018), a motion to dismiss a Fourteenth Amendment claim was denied upon allegations that the defendants knew, or should have known, about the prisoner's previous suicide attempts, drug use, and diagnosis of bipolar disorder. In another case, *Reynolds v. County of Onondaga*, 2023 WL 5200434 (N.D.N.Y. August 14, 2023), a motion to dismiss Eighth/Fourteenth Amendment claims was denied because it was alleged that defendants knew of the prisoner's drug use and history of suicide attempts.

Here, suicidal thoughts alone, with no indication of prior suicide attempts or psychiatric diagnoses, fails to rise to the level of an "obviously serious suicide threat." However, amendment may cure the allegations here by clarifying, with specificity, how Dr. Chukwuneke knew, or should have known, about Mr. Diaz Guzman's diabetes, suicidal ideation, and self-harm.

For the foregoing reasons, the Court grants Dr. Bernard Chukwuneke's Motion to Dismiss.

18

## B. The Court Grants DOC Defendants' Motion to Dismiss.

### 1. The Court Grants ADW Onyemekara Agunwa, ADW Alexis Parilla, and ADW Oladipo Salako's Motion to Dismiss.

The Complaint alleges that "ADW Agunwa requested that Mr. Diaz Guzman be transferred from EMTC to the Otis Bantum Correctional Center ('OBCC')" and that "ADW Parilla approved the transfer of Mr. Diaz Guzman from EMTC to OBCC." Doc. No. 1, ¶ 41–42. The Complaint further alleges that "[h]ad [the ADWs] reviewed Mr. Diaz Guzman's medical file prior to his transfer, [t]he[y] would have transferred him to a mental health unit, not an isolation unit. *Id.* ¶¶ 41–42.

ADW Agunwa and ADW Parilla, without any evidentiary, statutory, or case law support, state that DOC employees do not have the ability to access medical records pursuant to HIPAA. If that is the case, then ADW Agunwa and ADW Parilla would have had no way of knowing that Mr. Diaz Guzman had reported suicidal thoughts, and so could not have acted with deliberate indifference to his suicidal ideation. Such a defense is, however, based on an issue of fact, which cannot be considered on a motion to dismiss.

Moreover, according to 45 CFR 164.512(k)(5)(i), correctional facilities may disclose or use the health information of an inmate "if the correctional institution or such law enforcement official represents that such protected health information is necessary for:"

> (A) The provision of health care to such individuals;
>
> (B) The health and safety of such individual or other inmates;
>
> (C) The health and safety of the officers or employees of or others at the correctional institution;

(D) The health and safety of such individuals and officers or other persons responsible for the transporting of inmates or their transfer from one institution, facility, or setting to another;

(E) Law enforcement on the premises of the correctional institution; or

(F) The administration and maintenance of the safety, security, and good order of the correctional institution.

As was the case with Dr. Chukwuneke, the Complaint fails to adequately allege that review of the information in Diaz Guzman's medical record would indicate that he posed an "obviously serious suicide threat." *Case*, 2017 WL 3701863, at *11. As stated above, review of the medical record would merely indicate that Mr. Diaz Guzman had revealed that he had entertained suicidal thoughts — not that Mr. Diaz Guzman had a history of suicide attempts, or that Mr. Diaz Guzman had any psychiatric diagnosis indicating suicidal propensities. *See id.* at *11.

The Complaint also alleges that "ADW Salako, ADW Agunwa, and C.O. Bertrand were in the area and aware that Mr. Diaz Guzman had flooded his cell." Dkt. No. 1, ¶ 58. ADW Salako and ADW Agunwa argue that this fails to allege that they knew or should have known that Mr. Diaz Guzman had any medical or mental health issues, or that ADW Salako or ADW Agunwa took any actions with disregard for Mr. Diaz Guzman's health or safety. Dkt. No. 74, pp. 8–9.

In her opposition papers, Ms. Guzman alleges that from the allegations in the Complaint, the Court can infer that ADW Salako and ADW Agunwa knew that Mr. Diaz Guzman flooded his cell, asked for insulin, placed his mattress on the door, and stood on his bedframe. Dkt. No. 90, p. 11. These things can indeed be inferred from the allegations in the Complaint.

But it cannot be fairly inferred from the allegations of the Complaint that ADW Agunwa or ADW Salako knew, or should have known, that Mr. Diaz Guzman posed a risk of self-harm. "[K]nowledge that [a] prisoner [i]s acting violent or freakishly is not 'synonymous with having reason to know that the violence may become self-directed." *Belcher v. Oliver*, 898 F.2d 32, 35 (4th Cir. 1990) (citing *State Bank of St. Charles v. Camic*, 712 F.2d 1140 (7th Cir. 1983)). ADW Salako and ADW Agunwa's purported knowledge of Mr. Diaz Guzman's behavior does not equate to knowledge that Mr. Diaz Guzman might try to commit suicide. Prisoners flood their cells for a variety of reasons that do not include self-harm. *See, e.g., Fischl v. Armitage*, 128 F.3d 50 (2d Cir. 1997) (prisoner floods cell after being cheated in trade); *Montero v. Crusie*, 153 F.Supp.2d 368 (S.D.N.Y. 2001) (prisoner floods cell after guards fail to return prisoner's property); *Evans v. Fogg*, 466 F.Supp. 949 (S.D.N.Y. 1979) (prisoner breaks toilet in frustration from not receiving books from library).

Therefore, the Complaint fails to allege facts tending to show that ADW Salako, ADW Agunwa, or ADW Parilla knew or should have known that Mr. Diaz Guzman suffered from diabetes or suicidal ideation. Amendment could conceivably cure these defects by clarifying whether and how ADW Salako, ADW Agunwa, and/or ADW Parilla knew, or should have known, about Mr. Diaz Guzman's suicidal ideation.

As for the diabetes/insulin issue, the only allegation in the pleading is that Diaz Guzman was supposed to have a blood test (finger stick) in order to ascertain whether he was diabetic in need of insulin — not that he had ever received such a diagnosis in the past or that there was anything in his medical record so indicating. Therefore, there is no basis in the Complaint to infer that anyone was deliberately indifferent to a known requirement that Diaz Guzman receive insulin.

21

Insofar as this version of the pleading is concerned, ADW Agunwa, ADW Salako, and ADW Parilla's Motion to Dismiss is granted.

### 2. The Court Grants C.O. Theodore Robinson's Motion to Dismiss with Prejudice.

Ms. Guzman alleges that C.O. Robinson "shut off the water to Mr. Diaz Guzman's cell" after Mr. Diaz Guzman flooded his cell. Dkt. No. 1, ¶¶ 51, 55. In doing so, Ms. Guzman does not allege that C.O. Robinson knew, or should have known, that Mr. Diaz Guzman suffered from suicidal ideation or diabetes. Ms. Guzman alleges that, by shutting off the water, C.O. Robinson prevented Mr. Diaz Guzman from alleviating his excessive thirst from hypoglycemia. Dkt. No. 90, p. 13.

But at no point in the Complaint does Ms. Guzman allege that Mr. Diaz Guzman actually suffered from hypoglycemia, *see* Dkt. No. 1, and in her opposition papers, Ms. Guzman admits that the Complaint "states that Mr. Diaz Guzman *likely* experienced hypoglycemia from not receiving his insulin, which *likely* caused excessive thirst." Dkt. No. 90, p. 16 (emphasis added). That makes it clear that her allegations are purely speculative and not supported by provable facts.

Moreover, nothing in Ms. Guzman's pleading supports a conclusion that C.O. Robinson knew or should have known about Mr. Diaz Guzman's medical condition under the circumstances. *See* Dkt. No. 1. What the pleaded facts do show is that he was aware of disruptive behavior by an out-of-control inmate — which is not an uncommon event in jail, and not always one perpetrated by someone with a mental illness. The allegations of the Complaint support the fair inference that Robinson took ordinary measures to stop an inmate from continuing to flood his cell and the surrounding area — something that would have to have occurred without regard

to any risk of hypoglycemia, since flooding creates a risk for the larger institution. A thirsty inmate can always ask for water, but a flood must be stopped.

Therefore, the Court grants C.O. Robinson's Motion to Dismiss. I see no possible basis on which amendment could cure this problem, so the motion is granted with prejudice.

### 3. The Court Grants C.O. Robert Sanchez's Motion to Dismiss.

The Complaint alleges that, while fire safety officers and C.O.s responded to Mr. Diaz Guzman's flooded cell, "C.O. Sanchez was also in the area in the 'A' post." Dkt. No. 1, ¶¶ 51– 59. C.O. Sanchez states that the Complaint fails to allege that he knew anything about Diaz Guzman's either mental distress or purported need for insulin. As a result, the pleading fails to contain sufficient factual matter tending to support the inference that C.O. Sanchez knew, or should have known, that Mr. Diaz Guzman suffered mental distress. Conclusory allegations claiming that a defendant was or should have been aware of a defendant's mental health condition, without any factual basis to support those conclusions, do not survive a Rule 12(b)(6) motion to dismiss. *See Houston,* 2012 WL 729352.

Furthermore, plaintiff failed to allege that C.O. Sanchez observed or had even the "scantest awareness" of any purported misbehaviors. *Mateo v. Fischer*, 682 F.Supp.2d 423, 431 (S.D.N.Y. 2010). Again, it is possible that amendment may cure the problem. Or it may not.

Therefore, the Court grants C.O. Sanchez's Motion to Dismiss.

### 4. The Court Grants the Motions to Dismiss Made by C.O. Suriel Julio and C.O. Anthony Samuels.

Ms. Guzman, in her Complaint, states that when C.O. Julio and C.O. Samuels investigated the water coming out of Mr. Diaz Guzman's cell, Mr. Diaz Guzman asked for his insulin. Doc. No. 1, ¶¶ 60–61. Neither of the C.O.s called medical for Mr. Diaz Guzman, or

acted to assist him. *Id.* ¶ 62–63. The Complaint further alleges that neither of the C.O.s acted to assist Mr. Diaz Guzman "despite his obvious distress." *Id.* ¶ 63.

The Complaint does not allege that C.O. Julio or C.O. Samuels knew or should have known that Mr. Diaz Guzman needed insulin or suffered any symptoms related to diabetes – or that he even had insulin-dependent diabetes in the first place. *See* Dkt. No. 1. Ms. Guzman cites *Turner*, 2020 WL 496116, at \*9, to state that diabetes is a "sufficiently serious medical condition" for a Fourteenth Amendment claim. I could not agree more. However, as C.O. Julio and C.O. Samuels note, *Turner* involved a defendant who confiscated the plaintiff's insulin, ignored the repeated requests for insulin and pleas that he could go into a diabetic coma, and ignored the plaintiff's vomiting due to uncontrolled blood glucose levels. Here, the Complaint merely alleges that C.O. Julio and C.O. Samuels failed to act to procure insulin or additional medical help for Mr. Diaz Guzman, without alleging that they were aware that he used or required insulin. Dkt. No. 1, ¶¶ 62–63. It bears noting that there is no suggestion in the pleading that Diaz Guzman, who had by that time been in DOC custody for five days, had suffered any ill effects from not receiving insulin – that he had gone into any sort of diabetic coma, for example. "Obvious distress" does not often call for treatment with insulin, and Diaz Gomez's "obvious distress" (without any specification of what that entailed) is all that these officers allegedly saw.

There are scant allegations relating to these officers about Diaz Guzman's mental health, but to the extent Plaintiff sought to charge them with knowing that he was at risk of self-harm (an allegation that does not appear in the Complaint), a flooded cell does not logically suggest that Plaintiff's decedent posed a risk to himself. I repeat: saying that the officers observed Diaz Guzman's "obvious distress" is far from sufficient. As previously noted, cell flooding is a relatively common occurrence in jails, and not always by prisoners with mental health

24

conditions. Finally, as stated earlier, "Knowledge that [a] prisoner [i]s acting violent or freakishly is not 'synonymous with having reason to know that the violence may become self-directed." *Belcher*, 898 F.2d at 35.

Therefore, the Court grants the Motions to Dismiss made by C.O. Julio and C.O. Samuels, subject to the possibility that an amended pleading can solve these rather significant problems.

### 5. *The Court Grants Captain Roscoe Neely's Motion to Dismiss.*

Ms. Guzman alleges that, when Mr. Diaz Guzman flooded his cell, Captain Neely entered Mr. Diaz Guzman's cell to find Mr. Diaz Guzman "standing on the bed frame and behaving erratically" and that Mr. Diaz Guzman "moved a mattress to block the view into his cell." Dkt. No. 1, ¶ 51. In response to this, Captain Neely and another C.O. "removed the mattress from his cell and closed the door to his cell." *Id.* ¶ 54. Following this, "While Mr. Diaz Guzman was pacing his cell directly in front of his cell window, Captain Neely left the area." *Id.* ¶ 56.

The allegations in the Complaint do sufficiently allege that Captain Neely knew that Mr. Diaz Guzman behaved erratically, as he knew that Mr. Diaz Guzman had flooded his cell, stood on his bed, and blocked the view into the cell with a mattress. *Id.* ¶ 51. However, "Knowledge that [a] prisoner was acting violently or freakishly [i]s not synonymous with having reason to know that the violence might become self-directed." *Belcher*, 898 F.2d at 35. Plaintiff pleads no facts tending to show that Captain Neely either knew or had reason to know that Mr. Diaz Guzman posed a risk to himself that required either suicide watch or other heightened supervision. The pleaded allegations are equally or more congruent with the conclusion that Captain Neely was confronted with an unruly prisoner who was acting out – a familiar situation.

The Complaint further alleges that, because Captain Neely served as the supervisor on duty when Mr. Diaz Guzman allegedly asked other officers for insulin, that he should be held liable. However, "there is no special rule for supervisory liability" in a Section 1983 case, *Tangreti v. Bachmann*, 983 F. 3d 609, 618 (2d Cir. 2020), so a plaintiff must plausibly allege each "defendant's personal involvement in the alleged constitutional deprivation" to establish liability. *Grullon v. City of New Haven*, 720, F.3d 133, 138 (2d Cir. 2013). Therefore, the fact that Captain Neely supervised officers who allegedly knew or should have known about Mr. Diaz Guzman's medical needs fails to render Captain Neely himself liable for any failure to provide needed care. The Complaint here fails to allege any facts tending to show that Captain Neely either actually knew or should have known that Mr. Diaz Guzman asked other officers for insulin and that they, being aware of his alleged diabetes, failed to provide it — or that the lack of insulin caused Plaintiff's decedent any harm. The facts pleaded are that Mr. Diaz Guzman hanged himself — not that he went into a diabetic coma.

Therefore, the Court grants Captain Neely's Motion to Dismiss. While I very much doubt that amendment could cure the identified defects, I will not dismiss with prejudice at this time.

### C. The Court Grants Doe Defendants' Motions to Dismiss With Prejudice.

The Complaint alleges that "HHC Does and C.O. Does were responsible for providing Mr. Diaz Guzman his insulin and did not," *Id.* ¶ 69, and "C.O. Does were responsible for monitoring Mr. Diaz Guzman's cell and did not." *Id.* ¶ 70.

In New York, the limitations period to file a 42 U.S.C. § 1983 action is three years. *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *see also* CPLR § 214. In general, "'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." *Aslanidis v. U.S. Lines.*

*Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993) (internal citations omitted). The Court may allow Doe substitutions in an amended complaint to relate back to the original complaint, but only when all prongs of Fed. R. Civ. P. 15(c) are met. *Id.* Under Fed. R. Civ. P. 15(c)(1)(C), the following conditions must be met:

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that, but *for a mistake of identity*, the original action would have been brought against it; and . . . [4] the second and third criteria are fulfilled within 120 days of the filing of the original complaint, and . . . the original complaint [was] filed within the limitations period.

*Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 468-69 (2d Cir. 1995) (internal quotations omitted) (emphasis added). Failure to identify a Doe Defendant does not constitute a "mistake in identity." *Id.* at 470. Furthermore, no John Doe was given notice within 120 days after the original complaint was filed, as required by the fourth prong of Rule 15(c)(1)(C). The Complaint was filed on January 17, 2024. It is now October 24 — nine months later, and well beyond the 120-day period. But no John Doe has been provided with notice of the claims against him.

Mr. Diaz Guzman died on January 22, 2021. Dkt. No. 1, ¶ 1. The three-year statute of limitations window closed many months ago, without any effort to ascertain who the John Does are or to explain their roles in this situation. Therefore, the Court grants the Doe Defendants' Motion to Dismiss. As there is no cure for the failure to sue within the limitations period, dismissal is with prejudice.

## IV.    THE COURT DENIES PLAINTIFF'S MOTION TO AMEND WITHOUT PREJUDICE

Courts should give a plaintiff leave to amend his complaint at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*,

927 F.2d 698, 704–05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2). Under this liberal standard, leave is generally given as long as (1) the party seeking the amendment has not unduly delayed, (2) that the party is not acting in bad faith or with a dilatory motive, (3) the opposing party will not be unduly prejudiced by the amendment, and (4) the amendment is not futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

"Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Comm'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). In assessing whether the proposed complaint states a claim, we accept as true all non-conclusory factual allegations in the complaint and proposed amendments, and draw all reasonable inferences in Plaintiffs' favor. *Id.*

I have identified several defendants as to whom I do not believe the Complaint can be amended to assert a viable claim. As to the remaining defendants, it may be that that facts might be pleaded that would salvage a dismissed claim.

However, "Where the proposed amended complaint does not accompany the motion to amend, ... the Court may deny the motion without prejudice." *Smith v. Planas*, 151 F.R.D. 547, 550 (S.D.N.Y.1993). As Plaintiff did not attach a proposed amended complaint with this motion, I deny this Motion for Leave to Amend without prejudice.

Should Plaintiff choose to Move to Amend the Complaint again, she must be mindful of her duty to submit a well-pleaded complaint. In order to avoid (or survive) a second motion to dismiss, Plaintiff must set forth with specificity each discrete event giving rise to the alleged deliberate indifference, including: (1) what each Defendant knew, or should have known, about Mr. Diaz Guzman's mental health and medical conditions; (2) how each Defendant knew, or

should have known, of Mr. Diaz Guzman's mental health and medical conditions, and (3) the specific actions each Defendant took that deprived Mr. Diaz Guzman of his medical care. The fact that COC concluded that persons at Rikers acted inappropriately in connection with the death of her son does not obviate the need for Plaintiff to plead facts tending to show that the federal standard for deliberate indifference to his medical needs has been met.

Any Motion to Amend the Complaint must be filed, with the amended complaint attached, within thirty days after the entry of this opinion.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Dismiss as it pertains to Defendants Dr. Tasbirul Alam, M.D., Warren Bush, Terra Hailand, Dr. Bernard Chukwuneke, M.D., ADW Onyemekara Aguwna, ADW Alexis Parilla, ADW Oladipo Salako, C.O. Theodore Robinson, C.O. Robert Sanchez, C.O. Suriel Julio, C.O. Anthony Samuels, Captain Roscoe Neely, HHC Does 1–5, and DOC Does 1–5.

The Court DENIES Ms. Guzman's Motion for Leave to Amend without prejudice.

The Clerk of the Court is respectfully requested to remove Dkt. No. 72 from the Court's list of open motions.

This constitutes the decision and order of the Court. It is a written decision.

Dated: November 13, 2024

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

29