UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA A. GUZMAN, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF WILSON DIAZ GUZMAN, DECEASED,<br><br>                              Plaintiff,<br><br>         -against-<br><br>THE CITY OF NEW YORK, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION ("HHC"); CAPTAIN ROSCOE NEELY (SHIELD NO. 1839), CORRECTION OFFICER ("C.O.") KESTON BERTRAND (SHIELD NO. 18841); C.O. SURIEL JULIO (SHIELD NO. 14377); C.O. ANTHONY SAMUELS (SHIELD NO. 18737); HHC VANESSA LUBIN, RN; HHC JENNY ACEVEDO, RN,<br><br>                              Defendants. | **PLAINTIFF'S FIRST CONSOLIDATED SET OF DISCOVERY DEMANDS**<br><br>1:24-CV-00363(CM) |

Pursuant to Rules 26.3 and 33.3 of the Local Rules of the United States District Court for the Southern District of New York (the "Local Rules") and Rules 26(b), 33, and 34 of the Federal Rules of Civil Procedure, Plaintiff Maria A. Guzman, by and through her attorneys at Beldock Levine & Hoffman, LLP, hereby requests that Defendants produce sworn answers to the below interrogatories and produce the below-designated documents and things that are in the possession or control of the party or person served, within thirty (30) days of service of these demands.

Please take notice that Plaintiff will object to the introduction of any document or information at trial that was not produced in response to the following Interrogatories and Document Requests, and to any evidence about any requested document or information that has not been revealed by an appropriate response to these Interrogatories and Document Requests.

1

## **INSTRUCTIONS**

1. In responding to these requests, you shall furnish all information that is available to you, including information in the possession, custody, or control of your attorneys, accountants, investigators, experts, representatives, or other agents.

2. If, in responding to these requests, you are unable to respond fully, after exercising due diligence to obtain the information to do so, you shall respond to the fullest extent possible, specifying your inability to respond to the remainder, describing the efforts taken by you to obtain the information to fully respond, and stating whatever information or knowledge you have concerning the unfulfilled portion of any Request.

3. Pursuant to Local Rule 26.2, if any defendant withholds any documents requested because of a claim of privilege, please provide a privilege log which describes and sets forth the legal ground for withholding each document and further describe each withheld document by setting forth (i) the type of document, *e.g.*, letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other.

4. With respect to each document requested that has been lost, destroyed, or otherwise disposed of since its preparation or receipt, provide the following information separately as to each document: (a) type of document, *e.g.*, letter, memoranda, email, etc.; (b) name of author or preparer; (c) name of recipient; (d) date of recording or preparation; (e) description of the subject matter and content of the document sufficient to identify it; (f) the name of the last custodian of the document or copies thereof; and (g) the full particulars or circumstances whereby the document was lost, destroyed or otherwise disposed of.

5. If in responding to these requests you claim any ambiguity in interpreting either a request or a definition or instruction, such claim shall not be utilized by you as a basis for refusing to respond; rather, you shall set forth in a part of your response to such Interrogatory the language deemed to be ambiguous and the interpretation chosen or used in responding to the Request.

6. Defendants shall respond separately and completely to each request or subdivision, setting forth the question in full followed by each answer.

7. These requests seek production of all documents described, in their entirety, along with any attachments, drafts and non-identical copies.

8. Questions regarding the interpretation of these requests should be resolved in favor of the broadest possible construction.

9. The documents produced in response to these requests shall be: (i) organized and designated to correspond to the categories in the requests, or (ii) produced in a form that accurately reflects how they are maintained by you in the normal course of business, including, but not limited to the following:

   a. that all associated file labels, file headings and file folders be produced with the responsive documents from each file and that each file be identified as to its owner(s) or custodian(s);

   b. that all pages now stapled or fastened together and saved as individual documents be produced in a format that allows the parties to easily determine that they were previously stapled or fastened together, by, for example, providing a field that shows when one document stops and another starts; and

   c. that all documents that cannot legibly be copied be produced in their original form.

10. All audio, video, or photographic materials should be produced in their original format; digital photographs, videos, and other digitally recorded materials should be provided electronically or on compact discs or flash drives.

11. These requests are continuing in nature. If, after answering, Defendants obtain any new or additional information responsive to these requests, a supplementary response is required.

12. Whenever possible, Plaintiff requests that all documents be produced in their native format and including all metadata. Pursuant to the Federal Rules of Civil Procedure, Defendants may not convert the data to a form that is more burdensome or less searchable. Plaintiff will not accept any document production that requires specialized software to view, for example CaseLogistix, Concordance, Relativity, or Summation.

## DEFINITIONS

Plaintiff incorporates the Uniform Definitions in Discovery Requests contained in Rule 26.3 of the Local Rules.

In addition, Plaintiff defines the following terms as follows:

1. "Incident(s)" refers to the collective events described in the Complaint.

2. "This Action" refers to this litigation, and all related court proceedings, filings, appeals, and orders.

3. Any reference to the terms "City" and/or "DOC" and or "HHC" shall be construed to include The City of New York ("City"), including any and all of its agencies, the New York City Department of Corrections ("DOC"), and the New York City Health and Hospitals Corporation ("HHC"), such that a reference to one such term shall also include all terms (for example, a request for the names of certain DOC employees should be construed to include employees of any agency of the City of New York).

4. Any request for information related to "OBCC" refers to all of the facilities at Otis Bantum Correctional Center.

5. "Document" means, without limitation, the following items, whether printed or

4

recorded or reproduced by any other mechanical or electronic process, or written or produced by hand, which are in the possession, custody, or control of Defendants, their agents, representatives, or attorneys, including but not limited to all documents located at any DOC facility; in the possession of the Individual Officers; or at any storage site: electronic or physical agreements, communications, reports, correspondence, telegrams, electronic mail, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, drawings, sketches, maps, summaries or records of meetings or conferences, summaries or reports of investigations or negotiations, opinions or reports of consultants, photographs, motion picture films, video recordings, audio recordings, brochures, pamphlets, advertisements, circulars, press releases, drafts, letters, marginal comments appearing on any documents, reports and worksheets, subject and non-subject cover sheets, incident reports and worksheets, investigators' reports, memo book entries, log book entries, complaint reports and worksheets, witness statements, cell records, follow-up reports and worksheets, daily activity reports for officers, copies of other reports (both final and scratch versions), requests for commendations, affidavits, and all other writings.

6. Unless otherwise stated, any request for City, HHC or DOC documents or a policy or procedure of the City or DOC seeks information or documents in effect from May 1, 2015 through the present.

7. The following rules of construction and definitions apply to all discovery requests:

    a. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

    b. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

    c. The use of the singular form of any word includes the plural and vice versa.

    d. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

5

e.  The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

## INTERROGATORIES

1. Identify the full name, shield number, and current command or other service address of all Defendants described in the Complaint, along with a brief description of their role and DOC assignment on the Incident date(s), and the subject of their knowledge of the facts alleged in the Complaint. These persons may include, but are not limited to:

   a.  Individual Defendant Captain Roscoe Neely (Shield No. 1839);

   b.  Individual Defendant Correction Officer ("C.O.") Keston Bertrand (Shield No. 18841);

   c.  Individual Defendant C.O. Suriel Julio (Shield No. 14377);

   d.  Individual Defendant C.O. Anthony Samuels (Shield No. 18737);

   e.  Individual Defendant HHC Vanessa Lubin, RN;

   f.  Individual Defendant Jenny Acevedo, RN; and

   g.  All other employees described in paragraphs 31 to 78 of the amended complaint.

2. Identify all City officers and employees, by full name and shield number (if applicable), who were responsible for Mr. Diaz Guzman's supervision from January 17, 2021, the date he entered DOC custody, through January 22, 2021, the date of his death. For each person identified, state their specific staffing assignment or post on that day.

3. Identify incarcerated people, by full name and B&C number, who observed Mr. Diaz Guzman from January 17, 2021, the date he entered DOC custody, through January 22, 2021, the date of his death. For each person identified, state the dates they would have observed Mr.

6

Diaz Guzman.

4. Identify by full name and shield number (if applicable) of every City officer or employee assigned to OBCC from January 17, 2021 through January 22, 2021. For each person identified, state their specific staffing assignment or post on the applicable dates.

5. Identify all other persons who participated in, witnessed, or observed the supervision of Mr. Diaz Guzman or any of the events referenced in the lawsuit filed by Plaintiff in this action. With respect to each such individual, set forth the particular event and the nature of his or her participation, witnessing, or observation of that event.

6. Identify every medical provider and medical professional who treated or examined Mr. Diaz Guzman for the entirety of his time in DOC custody.

7. Identify every type of document that is generated pursuant to any DOC practice or policy in connection with monitoring incarcerated individuals for signs of mental health needs or suicidal ideation.

8. Identify every type of document that is generated pursuant to any DOC practice or policy in connection with monitoring incarcerated individuals for who suffer from diabetes.

9. Identify all DOC practices or policies from January 22, 2016 through January 22, 2021, related to obtaining, reviewing, and maintaining medical and mental health records when a person enters DOC custody.

10. Identify all DOC practices or policies from January 22, 2016 through January 22, 2021, related to obtaining, reviewing, and maintaining a persons' prior medical and mental health records from all hospitals when a person is transferred into DOC custody.

11. Identify all grievances filed by Mr. Diaz Guzman—or letters written by Mr. Diaz Guzman complaining of his conditions, mistreatment, and mental health needs—throughout his

time in DOC custody.

12. Identify all documentation of what City officers or employees viewed, reviewed, or transmitted Mr. Diaz Guzman's grievances—or letters written by Mr. Diaz Guzman complaining of his conditions, treatment, and mental health needs—throughout his time in DOC custody, who viewed and reviewed those grievances, and who they were transmitted to.

13. Identify all documents related to Mr. Diaz Guzman or the incidents described in the amended complaint that were ever provided to the New York State Police.

14. Identify all types of records that would be created by or provided to the New York City Department of Corrections Investigation Division to conduct an investigation into the types of incidents described in the complaint.

15. Identify all guidance memoranda or manuals related to all types of records responsive to Interrogatory 14.

16. Identify all documents related to Mr. Diaz Guzman or the incidents described in the amended complaint that were ever provided to the New York City Department of Corrections Investigation Division.

17. Identify all other individuals people who were housed in the same area as Mr. Diaz Guzman throughout his time in DOC custody.

18. Identify every type of document that is generated pursuant to any DOC practice or policy in connection with interviewing any witnesses of mental health needs or suicide attempts.

19. Identify every type of document that is generated pursuant to any DOC practice or policy in connection with reporting any mental health needs or suicide attempts.

20. Identify all lawsuits by name, court, and index/case number, filed against the City, alleging that for any portion of time between January 22, 2026 and January 22, 2021, the City was

8

negligent or deliberately indifferent with respect to mental health needs or suicidal ideation. This request is limited to the Riker's Island facilities.

21. Identify any and all persons identified in response to any of the foregoing interrogatories who have been the subject of complaints, grievances, investigations, lawsuits or other legal or disciplinary investigations or action within the past fifteen years, including but not limited to for negligence or deliberate indifference to serious medical needs. For every lawsuit identified in response to this interrogatory, list all plaintiffs and defendants, the causes of action, the date on which the suit was instituted, the court in which the suit was instituted, the docket or index number, and the result of each suit, including but not limited to those concluded by judgment or settlement.

## REQUESTS FOR DOCUMENT PRODUCTION

1. Produce all documents, electronically stored information, and other tangible things identified in response to the above Interrogatories.

2. Produce the entire personnel and disciplinary files of each individual identified in response to Interrogatory 1, regardless of final disposition of any disciplinary inquiry, from 5 years prior to the Incidents to the present.

3. Produce all photographs of Mr. Diaz Guzman in Defendants' custody.

4. Produce all photographs showing the locations of the scenes of the Incidents referred to by Plaintiff in this action.

5. Produce and preserve all surveillance footage, photographs, body-worn camera footage, or other audio and video files related in any way to the Incident.

6. Produce copies of statements from any witnesses or participants to the Incident.

7. Produce the personnel files and institutional files of each of the individual officers

9

listed in response to any of the Interrogatories above, including any and all records concerning the officer's pre-employment psychological screening tests and evaluations, positions and job descriptions, job performance and evaluations, complaints and disciplinary history, investigations, intake or reporting procedures, truthfulness, reviews, training and in- service training and retraining, and hiring or promotion.

8. Produce all statements and communications in Defendant's possession that were purportedly made by or taken from Mr. Diaz Guzman, to any City employee(s), including DOCCS and HHC officers and employees, during Plaintiff's incarceration, including about the Incidents in this lawsuit, beginning in January 2021.

9. Produce all communications and correspondence between DOC and HHC employees and other City agencies related to Mr. Diaz Guzman's incarceration starting in January 2021.

10. Produce a printout of Mr. Diaz Guzman's entire disciplinary history while in DOC custody.

11. Produce a printout of Mr. Diaz Guzman's entire movement history while in DOC custody.

12. Produce any and all medical reports and records maintained by DOC concerning Mr. Diaz Guzman, including, without date limitation: medical and mental health records, psychological and psychiatric reports and records, exam notes, test results, x-rays or other films, diagnosis, consultations, and appointments within any City facility or outside medical facility in which Mr. Diaz Guzman was evaluated or treated while in DOC custody.

13. Produce all documents maintained by DOC concerning Mr. Diaz Guzman including, without date limitation, all records maintained by DOC offices, by HHC, and at OBCC.

Such records should include, without limitation, Mr. Diaz Guzman's history, medical records, examination, testing, diagnosis, consultation, and opinions; work assignments and timesheets; investigation files; reports; interviews; photographs; records pertaining to disturbances allegedly committed while in custody; recordings (including, without limitation the videotape recording; audiotape recordings; and photographs taken in connection with any incident involving Mr. Diaz Guzman).

14. Produce all written or typed statements or reports within the City's possession, including drafts, concerning any of the Incidents described in the Amended Complaint.

15. Produce all grievances or complaints submitted by or on behalf of Mr. Diaz Guzman to any employee or agency of Defendant City, along with any responses or appeals.

16. Produce all documents related to any of the incidents or correspondences described in the Amended Complaint.

17. Produce all internal memoranda issued by DOC officials to the facilities where Plaintiff was held in DOC custody, related to Mr. Diaz Guzman, mental health episodes, suicides or suicidal ideation, and diabetes.

18. Produce all documents received by Defendants pursuant to Plaintiff's authorizations and releases.

19. Produce all documents which were given to any State, municipal, or federal investigative body, oversight agency, and/or court-appointed monitor regarding, for any portion of time between January 20216 to January 2021, conditions of confinement; lack of adequate medical and mental health care; and lack of staffing. This request is limited to the Riker's Island facilities.

20. Produce all documents related to Mr. Diaz Guzman or the incidents described in the Amended Complaint that were ever provided to the New York State Police.

21. Produce all records that were created by or provided to the New York City Department of Corrections Investigation Division to conduct an investigation into Mr. Diaz Guzman or the incidents described in the Amended Complaint.

22. Produce all guidance memoranda or manuals related to documents responsive to Interrogatory 15.

23. Produce all documents related to Mr. Diaz Guzman that were ever in the possession of DOC or HHC, including but not limited to treatment needs and mental health service level designations; admission and screening forms; diagnosis record; core history (including but not limited to history of treatment, education, and employment); psychiatric evaluation and psychiatric progress notes; case notes; primary therapy progress notes; interview notes; comprehensive suicide risk assessments; transfer documents (including but not limited to termination transfer notes); exceptional circumstances, security exception, and heightened level of care documents; discharge planning documents; Single Point of Access ("SPOA") applications; documents generated or relied on in preparing SPOA applications; responses to SPOA applications from county agencies; responses to SPOA applications from service providers; Central New York Psychiatric Center ("CNYPC") Corrections Based Operations ("CBO") chronological records; chronological history reports; all inpatient psychiatric records; CNYPC evaluations, progress notes, discharge summaries, and treatment recommendations; mental health reports; and all discharge recommendations.

24. Produce all records (including emails, memoranda, notes, and messages) showing or otherwise revealing what information about Mr. Diaz Guzman, his mental health condition(s), and mental health treatment needs that defendants obtained from his family members, the Mental Health Automated Records System ("MHARS"), the Psychiatric Services and Clinical Knowledge

Enhancement Database ("PSYCKES"), CNYPC Corrections-Based Mental Health Services, and from all other sources.

25. Produce all records related to all other incarcerated people housed in the same area as Mr. Diaz Guzman throughout his time in DOC custody.

26. Produce a list of all lawsuits filed against the City alleging that for any portion of time between January 2016 and January 2021, the City was negligent or deliberately indifferent with respect to lack of adequate medical and mental health care and lack of staffing;. This request is limited to Riker's Island facilities

27. Produce all complaints, allegations and requests for investigation concerning any allegation of negligence and/or deliberate indifference, for any portion of time January 2016 to January 2021, in connection with lack of adequate medical and mental health care and lack of staffing. This request is limited to Riker's Island facilities.

28. Produce all documents which were given to any investigative body regarding, for any portion of time between January 2016 and January 2021, lack of adequate medical and mental health care; and lack of staffing. This request is limited Riker's Island facilities.

29. Produce a copy of all compilations, reports, and/or summaries created by DOC or any other city agency regarding, for any portion of time between January 2016 and January 2021, lack of adequate medical and mental health care and lack of staffing. This request is limited to Riker's Island facilities.

30. Produce a copy of all City policies, procedures, guidelines, and/or directives, in effect at Riker's Island facilities in January 2021 concerning the intake process and housing placement.

31. Produce a copy of all City policies, procedures, guidelines, and/or directives, in

effect at Riker's Island facilities in January 2021 concerning the monitoring of people's mental health and suicidal ideation.

32. Produce all documents preserved in response to Plaintiff's February 5, 2021, notice to preserve, attached hereto as **Exhibit 1**.

33. Produce all documents Defendants intend to or may use at any trial of this matter.

34. All other documents, electronically stored information, and other tangible things that Defendants intend to use in defense of any of the claims in this action.

Dated: June 2, 2025
  New York, New York

*(signature)*

Olivia Clark
Beldock Levine & Hoffman, LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
P: (212) 277-5883
F: (212) 277-5880
E: oclark@blhny.com

*Attorneys for Plaintiff*

To: Alejandra Gil
  Gabrielle Apfel
  Heidell, Pittoni, Murphy & Bach, LLP
  81 Main Street
  White Plains, NY 10601

  *Attorneys for Defendants*

# EXHIBIT 1

# BELDOCK LEVINE & HOFFMAN LLP
## 99 PARK AVENUE, PH/26TH FLOOR
### NEW YORK, N.Y. 10016

CYNTHIA ROLLINGS
JONATHAN MOORE
JONATHAN K. POLLACK
HENRY A. DLUGACZ
STEPHEN J. BLUMERT
MARC A. CANNAN
DAVID B. RANKIN
LUNA DROUBI
MYRON BELDOCK (1929-2016)
LAWRENCE S. LEVINE (1934-2004)
ELLIOT L. HOFFMAN (1929-2016)

TEL: (212) 490-0400
FAX: (212) 277-5880
WEBSITE: blhny.com

COUNSEL
BRUCE E. TRAUNER
PETER S. MATORIN
KAREN L. DIPPOLD
JEFFREY A. GREENBERG
MARJORY D. FIELDS
EMILY JANE GOODMAN
(JUSTICE, NYS SUPREME COURT, RET.)
FRANK HANDELMAN

REF:

WRITER'S DIRECT DIAL:
**212-277-5825**
**drankin@blhny.com**

February 5, 2021

**VIA FEDEX**

New York City Department of Correction
75-20 Astoria Blvd.
East Elmhurst, New York 11370
ATTN: Legal Affairs

New York City Law Department
100 Church Street
New York, New York 10007

Re:   **NOTICE TO PRESERVE**

Dear Responsible Officer:

My office represents the family of Wilson Diaz-Guzman (B&C No. 3492100159). On or about January 22, 2021, Mr. Diaz-Guzman committed suicide while in your custody at detention facilities on Rikers Island. We anticipate litigation, and accordingly, hereby put you on notice to preserve the following materials, media, documents, and/or electronically stored information for the period of time that Mr. Diaz-Guzman was in the custody of the New York City Department of Correction ("NYCDOC") in January of 2021:

1. Any and all video recordings that capture Mr. Diaz-Guzman, particularly for the date of January 22, 2021, including but not limited to:

    a. Any and all video recordings that reflect Mr. Diaz-Guzman's intake into facilities on Rikers Island;
    b. Any and all videos that reflect Mr. Diaz-Guzman's time at facilities on Rikers Island;
    c. Any and all videos that record the cell that housed Mr. Diaz-Guzman; and
    d. Any and all video recordings of Mr. Diaz-Guzman's exit from Rikers Island.

2. Any and all documents received from the New York State Department of Corrections Division of Parole or the New York City Department of Probation concerning Wilson Diaz-Guzman.

3. Any and all medical evaluations and intake documents for Wilson Diaz-Guzman.

Beldock Levine & Hoffman LLP

NYCDOC & NYCLD
February 5, 2021
Page 2

4. Any and all log book entries, including but not limited to:

   a. intake post logs;
   b. intake new admission tracking log;
   c. clinic new admission logs;
   d. clinic post logs;
   e. emergency health care referral log books;
   f. housing logbooks;
   g. crime scene logbooks;
   h. transfer log books;
   i. daily/shift log books; and
   j. supervising officers' log books.

5. Any and all records maintained by NYCDOC on Mr. Diaz-Guzman. This includes but is not limited to:

   a. correctional records, including but not limited to custodial and legal files;
   b. incident report forms;
   c. records on transfers;
   d. security risk group/ Gang Intelligence Unit records;
   e. search records;
   f. disciplinary records;
   g. grievance records;
   h. requests for medical or mental health attention/appointments;
   i. intake records;
   j. classification records, including the Arraignment and Classification Risk Screening Form and Suicide Prevention Screening Guidelines;
   k. movement records;
   l. placement records;
   m. housing records;
   n. program records;
   o. visit records;
   p. escort records;
   q. transport records;
   r. discharge planning records;
   s. security records;
   t. law enforcement records;
   u. probation and parole records;
   v. Chaplain's Report;
   w. Incident Photos;
   x. rehabilitation records; and
   y. medical records – including mental health records.

Beldock Levine & Hoffman LLP

NYCDOC & NYCLD
February 5, 2021
Page 3

6. Any and all investigation records regarding the incident on or about January 22, 2021, in which Mr. Diaz-Guzman died. This includes but is not limited to:

   a. Inmate Statements;
   b. Unusual Incident Reports;
   c. Incident Reports;
   d. Injury to Inmate;
   e. Audio recordings of witness interviews;
   f. Video recordings of witness interviews;
   g. Use of force reports and attachments;
   h. Investigation reports;
   i. Any preliminary reports;
   j. Any preliminary investigative reports;
   k. any video or audio records of location of incident;
   l. Correspondence informing the NYCDOC Chain of Command;
   m. Correspondence informing the NYCDOC Investigation Division;
   n. Correspondence informing the New York City Police Department, the Bronx District Attorney's Office, the State Commission of Corrections and/or any other Outside agencies;
   o. The complete NYCDOC Investigation Division file inclusive of all reports, case logs, attachments, interview recordings, internal department correspondences regarding the investigation, and external correspondences with other agencies regarding the investigation; and
   p. The complete NYCDOC Health Affairs file inclusive of all reports, case logs, attachments, interview recordings, internal department correspondences regarding the investigation, and external correspondences with other agencies regarding the investigation.

7. Any and all disciplinary files and records of NYCDOC personnel in connection with the incident on January 22, 2021, which resulted in the death of Mr. Diaz-Guzman, including but not limited to:

   a. Personnel disciplinary files;
   b. Employee performance services report;
   c. Memorandum of complaints against employees;
   d. Employee performance service reports;
   e. Notices of Pleading and Hearings;
   f. Overtime Reports;
   g. Notices of Suspension;
   h. Charges and Specifications;
   i. Notices to Appear before the NYCDOC Investigation Division;
   j. Negotiated Plea Agreements;
   k. Probation Agreement Forms; and

NYCDOC & NYCLD
February 5, 2021
Page 4

      l. All records regarding Office of Administrative Trials and Hearing (OATH) trials.

8. Any and all materials, media, documents, and/or electronically stored information connected with the incident on or about January 22, 2021 which resulted in Mr. Diaz-Guzman's death that was not captured by the above-listed items.

If you have any questions or concerns regarding this matter, please contact me.

           Very best regards,

           David B. Rankin
           *Partner*
           BELDOCK LEVINE & HOFFMAN